CLYDE WOOD AND O. D. RHODEN, *Plaintiffs in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

Division B.

Opinion filed October 18, 1929.

*John B. Singletary,* for Plaintiffs in Error;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant, for the State.

BUFORD, J.—The plaintiffs in error were indicted and convicted, being charged with the offense of robbery by a person armed.

The indictment charges the robbery to have been from the person of one I. L. White, the accused being armed with a dangerous weapon, to-wit: a pistol, which they had and presented at and upon the body of White with intent, if resisted by him, to kill or maim him.

The charge is under the provisions of section 5055, Revised General Statutes of Florida.

It is insisted by plaintiffs in error that Section 7157, Comp. Gen. Laws of Florida, being a codification of former Acts including Chapter 12246, Acts of 1927, is the statute in force in this State.

This question was raised in the lower court and was

determined adversely to the plaintiffs in error in an order overruling and denying a motion in arrest of judgment, such order being in the following language, to-wit:

"The above cause coming on this day to be heard upon motion in arrest of judgment based on the ground that robbery as defined by the 1927 Act of the Legislature is a misdemeanor and not a felony on account of the place of imprisonment not being specified as in the State prison, and the court having heard the argument of counsel and examined the Journal of the Senate for 1927, and it not appearing from the Journal that the Act of 1927, namely House Bill 222, passed the Senate as required by Section 17 of Article III of the Constitution of Florida, in that the Journal does not show the second reading of the bill or its final passage, and does not show the vote on the final passage of the bill taken by yeas and nays or entered on the Journal of the Senate, the court is, therefore, of the opinion that the Act of 1927 did not pass the Senate and is unconstitutional and that this offense is properly prosecuted and punished under the provisions of Section 5055, Rev. Gen Stats. of Florida of 1920, and that the the indictment in this case sufficiently charges an offense under Section 5055, it is therefore, upon consideration:—" etc.

This holding of the lower court is supported by the record as presented by the Journal of the Senate of 1927 and was, therefore, without error.

The contents of the Comp. Gen. Laws 1927, has never been enacted in whole as the statute law of the State of Florida, but by legislative enactment this compilation constitutes only *prima facie* evidence of the statutes and, therefore, Chapter 12246, as shown as Section 7157, Comp.

Gen. Laws of Florida, has acquired no additional strength, force or effect by having been included in this compilation.

It is contended by plaintiffs in error that a definite description of the property, if the same was known to or was easily available to the grand jury, was necessary to be alleged in the indictment. This question was determined adversely to the contention of the plaintiffs in error in an able opinion prepared for this Court by Mr. Chief Justice BROWN in the case of Stephens v. State, 92 Fla. 43, 109 So. R. 303 in which the Court say:

"Section 2812, Rev. Gen. Stats., reads as follows:

" 'No judgment shall be set aside or reversed, or new trial granted by any court of the State of Florida, in any cause, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of injustice. This section shall be liberally construed.'

"Applying the principle announced by this statute, which was adopted some 15 years ago, and which but crystallized into statutory form the 'harmless error' doctrine which had so frequently been announced by this Court, we can not see how the plaintiff in error has been prejudiced by the failure of the evidence to correspond strictly with the description of the money as alleged in the information. While it is the more approved practice to describe the property as definitely as the circumstances or the evidence before the grand jury reasonably permits, especially in cases where such description has a real bearing upon the guilt or

innocence of the accused, yet if the information had merely alleged that the property taken by the robbery consisted of money of the value of a named amount, such allegation would have been legally sufficient, and would have supported a conviction, if the evidence had shown the robbery of any particular kind of money of value, even though the value was less than the amount alleged. See authorities above cited; also Edwards v. State, 49 Ala. 334. When, as here, the information went further, and alleged with, in this case unnecessary particularity, that the property taken consisted of 'one lot of paper bills and silver coins,' failure to prove that particular part of the allegations will be treated as immaterial in a case, like the present one, where the question of guilt, or the proof thereof, does not in any way depend upon the identical description or character of the money taken; the remainder of the description (i. e., money of the United States of the value of one hundred and sixty-four dollars and twenty-six cents) being legally sufficient, and proof thereof sufficiently made. It is not denied, and the evidence showed without contradiction, that Tyler was robbed of money of the United States of the value of one hundred and sixty-four dollars and some odd cents. The defense was that the defendant did not participate in such robbery and knew nothing about it. What difference did it make to the defendants whether the money taken was in paper bills and silver coins or all silver, or all paper? That was not a disputed question at the trial, and the error here complained of had no bearing whatever upon the contested issue in the court below, and could not have had any influence upon the verdict. Certainly it can not be said, in the language of the statute, that an exami-

nation of the entire case makes it appear that the error complained of has resulted in a miscarriage of justice. It was the evident purpose of this statute that convictions should not be set aside on account of mere technical errors, which did not affect the merits of the case on trial, and which had no legitimate bearing upon the question of the guilt or innocence of the defendant of the crime charged, or the amount of punishment imposed therefor.''

It is contended by the plaintiffs in error that the evidence was insufficient to support the indictment charging robbery from the person, because the money, which was the alleged subject of the robbery, was shown not to have been taken from actual contact with the person of White, but was taken in part from a money drawer in the banking room where White was held up by the accused, and a part from the vault of the bank.

The evidence shows that White was the cashier of the bank, that he was present and in custody and control of the banking room and vault and that the money was, until the advent of the accused, under his supervision, possession, custody and control.

In 23 R. C. L. 1142 the writer says:

''It is often-stated that an essential and distinguishing characteristic of robbery is the fact that the felonious taking must be from the person of another, but by the great weight of authority the words 'taking from the person of another' as used in connection with the common law definition of robbery, are not restricted in application to those cases in which the property taken is in actual contact with the person of the one from whom it is taken, but include within their

meaning the taking by violence or intimidation from the person wronged, in his presence, of property which either belongs to him or which is under his personal protection and control. And where such words have been incorporated into statutes defining robbery they have received the same construction. In this connection the preposition 'from' does not convey the idea of contact or propinquity of the person and property. It does not imply that the property is in the actual or immediate presence of the person. The thought of the statute, as expressed in the language is that the property must be in the possession or under the control of the individual robbed that violence or putting in fear was the means used by the robber to take it. If it is away from the owner, yet under his control, for instance in another room of the house, or in another building on his property, it is nevertheless in his personal possession; and, if he is deprived thereof, it may well be said it is taken from his person. Goods are called personal property in the law, and presumed to accompany the person. If taken from the owner, this relation of owner and property is surrendered, and the goods are separated from the person, and this essential element of the offense is established.''

The construction of the meaning of the words, ''taking from the person of another'' as above set forth is applicable to the language used in Section 5055, Rev. Gen Stats. of Fla., and, therefore, the proof submitted in the instant case as to this element of the offense was sufficient to support the charge.

Finding no reversible error disclosed by the record, we think the judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.